## McCartney's Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner and Hunter, JJ.

*James E. Gallagher, Jr., Cornelius C. O'Brien,* and *Walter B. Gibbons,* for exceptants.

*Gerald A. Gleeson,* contra.

VAN DUSEN, P. J., November 24, 1947.—Testatrix gave to her brother, Harry W. Boyle, "my home, presently occupied by me at Orthodox and Pilling Streets,

Frankford, Philadelphia, and the entire contents thereof, with the exception of wearing apparel and jewelry belonging to me". In the home was a small safe which contained bonds of the United States of Brazil, certificates for registered stocks, insurance policies, bank books, coupons, real estate and mortgage papers, miscellaneous jewelry of no great value, and $25 in gold coins. The auditing judge awarded the securities and cash found in the safe to Harry W. Boyle, and exceptions have been filed by the residuary legatees.

We adopt as an expression of our views the statement of Judge Klein in his recent adjudication of Estate of John Renner, deceased, no. 3733 of 1946:

"Normally, when used in its ordinary sense, the phrase, 'contents of a home' designates those items of personal property which convert an empty house into a home. It would include furniture, floor coverings, electrical appliances, pictures, articles of decoration, linens, kitchen and silverware, and other articles of similar character commonly used in maintaining a home. Usually the expression would not include cash, jewelry, choses in action or evidences of debt.

"Moreover, a distinction must be drawn between a gift of the contents of a small container, such as a safe or safe deposit box, a trunk, or a box, and a gift of the contents of a building. In the former case the word 'contents' should be construed in its broadest possible meaning, consistent with the existing circumstances. In situations, such as exist in the present case, in which contents of a home, business establishment, or other building are involved, the meaning of the word 'contents' should be restricted to its ordinary and common usage."

The legacy in that case read "my home and garage at No. 1324 N. Marston Street, Philadelphia, together with the entire contents thereof including my pets and

my flower garden absolutely." The question concerned $10,300 in cash found in a small wooden tool box in the cellar, and it was held that this money did not come within the term "contents" of a "home". This money constituted more than half of decedent's estate and, if it was regarded as a specific bequest, there would not be enough left to pay money legacies, or any residue to set up a trust under the will. These circumstances deprive the decision of value as a precedent here; but we have adopted Judge Klein's language as a statement of the applicable principle upon which we cannot improve.

This principle is well illustrated by the converse case of Cowan v. Cowan, 90 N. H. 198, 6 A. (2d) 179, in which the legacy was "my house . . . and contents of all kinds". It was held that an automobile and tools in a garage which was part of the homestead were included.

The safe is unimportant. It might have contained silverware or other household articles of value. The case turns upon the nature of the items.

The expression "entire contents" is no more than "contents". And the exclusion of wearing apparel and jewelry only shows that testatrix thought that they were or might be "contents". The maxim *expressio unius est exclusio alterius* means that where a general term ordinarily would include a number of particulars, the express inclusion of some particulars implies that the general term is to be confined to those particulars and the like. It is "ejusdem generis" differently expressed. It does not mean that the exclusion of particulars, which would ordinarily be included in the general term, enlarges its meaning, and brings in particulars which otherwise would not belong there.

The exceptions are sustained and the adjudication, as modified, is confirmed absolutely.

## McCartney's Estate

*Dissenting opinion*

LADNER, J., November 14, 1947.—In the Renner adjudication, relied on in the majority opinion, the auditing judge also said:

"The word 'contents' is general in character and is not a certain and definite description of any particular class of property. See Cassidy's Estate, 344 Pa. 179, 181 (1942), and Graybill v. Fire Insurance Assn., 170 Pa. 75, 83 (1895). *Since the word cannot be defined with exactness or precision, each case involving its use is sui generis, and its meaning must be ascertained by studying the testator's language in light of all the attending circumstances.*"

I agree that the statement quoted is the correct principle governing the question of what personal property a testator means to include in a bequest described by the word "contents", and in my adjudication I so said.

In the Renner case, there were three factors that the auditing judge there mentioned which indicated the testator's intent:

(*a*) Decedent's gross personal estate was approximately $15,000, of which all except a saving fund deposit of $3,000, was located in the house which, with its contents, was bequeathed to claimant. To have interpreted the word "contents" so broadly as to cover four fifths of the entire personal estate would have not only destroyed testator's obvious testamentary scheme but would have rendered practically meaningless the rest of the will.

(*b*) There was testimony that testator had the $12,000 (all in cash) in the house only as a temporary expedient. He had made application for a bank safe deposit box in which to place this cash but was unsuccessful in getting a box until a few days before he died when his illness prevented him from utilizing it.

(*c*) Finally, the language used by testator in the Renner case strongly suggested a restricted meaning of the word "contents" was intended. On this point the auditing judge there said: "That the testator intended the phrase 'entire contents' in a restricted sense is further suggested by the fact that he qualified it by saying, 'including my pets and my flower garden'. The pets were kept in testator's house. If the 'entire contents' was meant to include all forms of personal property the pets, which are personal property, would presumably have been included in the gift, and it would have been unnecessary to make specific reference to them."

Far different is the instant case. Annie McCartney's gross personal estate was approximately $100,000. Practically all of her securities were kept in her bank safe deposit box. In the safe at her home, besides her jewelry, were kept the items listed in my adjudication, being mostly defaulted foreign bonds, and securities of little or no value, together with $25 in gold. The whole appraised value thereof, viz., $2,300, was a trivial sum compared with her estate. The interpretation of the words "entire contents" so as to include these items neither affected her testamentary scheme nor rendered the rest of the will meaningless.

Further, there was no testimony here as in the Renner case from which it could be inferred that the items were only temporarily in decedent's house. Rather the inference is that the securities in question were carefully culled out of the valuable securities which remained in her bank safe deposit box.

Finally, the language here, viz.: "entire contents thereof with the exception of wearing apparel and jewelry belonging to me" showed testatrix used the word "entire contents" in the broad sense and felt the excluded articles would pass to her brother unless ex-

pressly excepted, making the instant case the exact converse of the Renner case.

I know of no case, and none is cited either in the majority opinion or in briefs of counsel, that has ever applied the ejusdem generis doctrine to articles excepted from a broadly worded bequest; in fact, Old Colony Trust Co. v. Hale, 302 Mass. 68, 18 N.E. (2d) 432, rules the contrary. It seems to be utterly absurd to apply that doctrine to this case for that would result in claimant being entitled only to things of the same kind, i. e., things like wearing apparel and jewelry. To apply that doctrine even the household furniture would be excluded and the whole bequest rendered meaningless.

For these reasons, and for the reasons and the authorities set forth in my adjudication, I would dismiss the exceptions.