## Coffman Estate

*A. Lynn Corcelius*, for executor.

*R. Merle Heffner*, for exceptant.

*Morris M. Terrizzi* and *Joseph W. Mullin*, contra.

HIMES, P. J., November 26, 1968.—This proceeding is before the court on exceptions to the auditor's report, confirming the first and partial account and state-

ment of proposed distribution filed by C. Jewett Henry, executor of the last will and testament of O. Lee Coffman, deceased.

The thrust of all the exceptions is the complaint that three certificates of deposit having a total face value of $96,000 should have been awarded to the exceptant, Thelma Coffman Miller.

The sixteenth paragraph of decedent's will provides as follows:

"I give and bequeath all of the silverware, dishes, furniture, furnishings, equipment, and contents of my home to my niece, Thelma Coffman Miller, absolutely".

The residuary clause (paragraph nineteen) of the will provides as follows:

"I give, devise and bequeath all the rest, residue and remainder of my estate, including any bonds, stocks, securities, notes, mortgages, or real estate, or any assets of my estate whatever, to a Board consisting of six men taken from the Church of the Brethern Board at 22 South State Street, Elgin, Illinois, and the fund constituted by this bequest to be known as the 'Mr. and Mrs. O. Lee Coffman Fund' and to be used for promoting the work of the Church and the dissemination of the gospel wherever the most needed in the judgment of the above named Board, said Board to have discretion in disposing of all securities and real estate so as to be most advantageous for the fund hereby created; the personnel of the said Board shall be selected from the General Mission Board, Board of Education, General Ministerial Board and the General Education Board".

The question before the learned auditor, William J. Myers, Esquire, and now before the court is: Whether three certificates of deposit having a total face value of $96,000 found in a locked dresser drawer in the home of decedent, passed under the sixteenth paragraph of his will to his niece, Thelma Coffman Miller? The au-

ditor concluded that they did not pass. This court agrees.

O. Lee Coffman died November 17, 1965, a resident of the Borough of Huntingdon, Huntingdon County, Pa., having made his last will and testament dated May 31, 1951, and a codicil thereto dated December 1, 1959, which documents were prepared by his attorney, C. Jewett Henry, Esq.

At the time of his death on November 17, 1965, decedent was seized of real estate appraised at $6,000 (his home) and personal estate in the sum of $202,-651.73, and of the latter amount $96,000 was represented by the three certificates of deposit. Of the 17 paragraphs making bequests in his original will of May 31, 1951, 10 of them are outright to charitable or educational institutions; paragraph three creates a spendthrift trust of $10,000, for his nephew, with remainder to American Bible Society of New York; paragraph four gives $5,000 to Thelma Coffman Miller; paragraph eighteen devises his home to her; paragraph sixteen bequeaths to her "All of the silverware, dishes, furniture, furnishings, equipment, and contents of my home", and paragraph five bequeaths $5,000 to his brother, Guy Coffman, providing that ". . . if at the time of his death, any part or portion of this bequest be remaining it shall be given to Thelma Coffman Miller . . .".

In a codicil dated December 1, 1959, testator created a testamentary trust of his General Motors stock, the income to be paid to his niece during her life, with provision that upon her death the stock should revert to and become part of the residue of his estate under the nineteenth paragraph of his will. The General Motors stock was valued at $53,208 at the time of death of decedent.

When decedent, in the sixteenth paragraph of the will prepared by his lawyer, bequeathed "all of the

silverware, dishes, furniture, furnishings, equipment, and contents of my home to my niece, Thelma Coffman Miller, absolutely", did he intend by the use of the word "contents" to include bonds, stocks, securities or notes? More specifically, did he intend to include certificates of deposit of $96,000? The intent of the testator is the pole star, as pointed out by counsel for exceptant during oral argument and in his brief.

Testator's disposition in his original will of the lion's share of his estate discloses his scheme of distribution, and it indicates his major concern was in providing for charities and education. It negates exceptant's contention that, when he made his will, his niece was so overwhelmingly the object of his bounty as to exclude others as principal objects. When testator made his will on May 31, 1951, it is obvious that when he bequeathed the silverware, dishes, furniture, furnishings, equipment and "contents" of his home, that by the term "contents" he did not intend to bequeath to his niece nonexistent certificates of deposit. Further, the fact that on December 1, 1959, testator made a codicil bequeathing the income from his General Motors stock to his niece for her life, does not justify the conclusion that testator thereby intended that the word "contents" used in his original will should be construed to include the three savings certificates comprising approximately one-half of his estate.

It is the rule of ejusdem generis that, where words are used or placed in the same sentence with other words describing a particular kind of property and in such a connection as to show that the general words convey to the mind not an intent to give them the widest meaning, but simply as comprehending the character of things given in the other part of the sentence, their meaning will be so restricted. See Stauffer

Estate, 10 Lebanon 114 (1964); 95 C.J.S., Wills, §601; Reim Estate, 21 D. & C. 2d 650 (1960); Estate of William Lippincott, 173 Pa. 368 (1896), and Gibbons Estate, 224 Pa. 37. Especially, where there is a residuary clause in a will, and in another clause particular words describing particular kinds of property are followed by a general term, the general term ordinarily is restricted in meaning to provisions of like kind. The doctrine of ejusdem generis is not a rule of property, but only a rule to aid in ascertaining intent. Where a will indicates that testator did not intend the general words to be so restricted, the rule of ejusdem generis will not be applied. In the instant case, it is believed that neither specific language in the will nor a consideration of the entire will discloses any intent upon the part of testator that the general word "contents" should not be restricted to the same general class of things as those specifically enumerated. Certificates of deposit do not belong to the same class of things as silverware, dishes, furniture, furnishings, and equipment.

Both decedent's will and codicil obviously were prepared for him by his attorney. The learned auditor said in his report, "It is indeed difficult, if not impossible, to conclude that such a man intended that nearly fifty per cent of his gross estate should pass under so vague a designation as 'contents of my home'. It is more reasonable to believe that, if testator had an intent to bequeath almost half his estate to his niece, he would have revised his will to insure clearly the accomplishment of such a purpose".

This court approves and confirms the conclusion of the auditor that the three certificates of deposit should not be distributed to Thelma Coffman Miller, niece, under the sixteenth paragraph of decedent's last will and testament.

The court approves and adopts the findings of fact and conclusions of law of the learned auditor.

### DECREE

Now, November 26, 1968, the exceptions of Thelma Coffman Miller to the report of William J. Myers, Esquire, auditor, are overruled and dismissed, and the auditor's report is confirmed absolutely. Exception noted for Thelma Coffman Miller.