Lamb Estate.

Argued November 8, 1971.   Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*William L. Kinsley,* with him *Edward Davis* and *Howard J. Casper,* for appellant.

*Walter B. Gibbons,* with him *George S. Forde, Jr.,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, December 20, 1971:

This appeal requires that we determine whether the specific devise of a house "including the contents thereof, absolutely" is a gift of not only the furniture and furnishings but also of three savings accounts, a checking account, three savings bank certificates and uncashed checks payable to testatrix. These latter items, all found in the home, amount to $46,140.63, and constitute a substantial part of the estate.

Testatrix, Marie A. Lamb, died April 27, 1971, leaving a will dated October 22, 1968, which was duly admitted to probate. The sole specific bequest in the will devised the "property 4907 Cedar Avenue . . . including the contents thereof, absolutely" to her nephew; the residuary estate was bequested in equal shares to five named charities.

The nephew-appellant claims that testatrix' gift to him of the contents of the house included the savings and checking accounts, the savings bank certificates and the uncashed checks. The charities-appellees contend that these bank items are not part of the "contents" of the house and are properly includable in the residuary clause. The court decreed distribution of these assets to the appellees. Appellant filed exceptions

which were denied by the court en banc. This appeal followed. We affirm the adjudication of the orphans' court.

It is well settled that ". . . the duty of the court is to ascertain, if possible, the intent of the testator . . ." and ". . . the court must garner, if possible, the intent of the testator from a consideration of *all* the language contained in the four corners of the will, together with all the surrounding and attendant circumstances and from the scheme of distribution and not merely from isolated clauses or provisions of the will. . . ." *Hill Estate,* 432 Pa. 269, 272, 247 A. 2d 606, 608-09 (1968) (emphasis in original); *Schappell Estate,* 424 Pa. 390, 392, 227 A. 2d 651, 652 (1967); *Vandergrift Estate,* 406 Pa. 14, 26, 177 A. 2d 432, 438 (1962).

The testatrix clearly manifested an intent to leave her nephew a specific devise and the residuary estate to the five named charities. If appellant's construction of the will is correct, he will receive practically the entire estate and the testatrix's charitable intention as expressed in the residuary clause would be meaningless and ineffective. Furthermore, the testatrix specifically directed that all estate and inheritance taxes be borne by the "general estate" and all "legacies, devises and other gifts of principal and income" to her beneficiaries, be free of such taxes. Under appellant's construction of the will, testatrix's tax direction would be frustrated since no assets would be left to satisfy these tax obligations. To give meaning to the residuary clause and the allocation of the tax burden, appellant's construction of the phrase "including the contents thereof, absolutely" cannot be accepted. As this Court observed in *Vandergrift,* supra, ". . . a construction which renders any of the words nugatory and futile must be rejected. . . ." 406 Pa. 14, 26, 177 A. 2d 432, 438 (1962).

A similar issue was presented to the New York courts in *Re Falvey's Will,* 15 App. Div. 2d 415, 224

N.Y.S. 2d 899, aff'd, 12 N.Y. 2d 759, 234 N.Y.S. 2d 713 (1962) (per curiam). There the will left a house "together with all furnishings and all property and articles of whatsoever nature found therein" to two named beneficiaries and also created a charitable trust of the residuary estate. The named beneficiaries there, as the nephew here, claimed that the contents of the house included not only the furnishings but also United States Savings bonds which constituted a substantial part of the estate. In rejecting this claim, the Court observed: "If the dispositive provisions in respect of the house and contents in the instant will comprehend all of the testatrix's property, another portion of her will, which manifested an intention of setting up a charitable trust, is rendered ineffective because of lack of available assets. Considering the circumstances surrounding the drafting and execution of the will . . . and reading the will in its entirety in accordance with well established canons of construction, we cannot agree that the testatrix contemplated the disposition of her entire estate to respondent thereby preventing the establishment of a charitable trust." Id. at 417, 224 N.Y.S. 2d at 902-03. Likewise, in the present case, the orphans' court division properly determined that testatrix did not intend to leave her entire estate to her nephew thereby making meaningless the charitable bequests designated in her residuary clause. The court's rejection of appellant's interpretation of the will is clearly supported by testatrix's expressed intent as reflected in her residuary and tax clauses.*

---

\* The hearing court's construction of the phrase "contents thereof" to include only the furniture and furnishings but not savings and checking accounts, savings bank certificates, and uncashed checks is in accord with the general usage of the phrase: " 'Normally when used in its ordinary sense, the phrase "contents of a home" designates those items of personal property which convert an empty house into a home. It would include furniture, floor

Decree of the orphans' court division is affirmed. Each party to pay own costs.

Mr. Chief Justice BELL and Mr. Justice BARBIERI took no part in the consideration or decision of this case.

coverings, electrical appliances, pictures, articles of decoration, linens, kitchen and silverware, and other articles of similar character commonly used in maintaining a home. Usually the expression would not include cash, jewelry, choses in action or evidence of debt.'" *McCartney's Estate*, 61 Pa. D. & C. 112, 113 (O.C. Philadelphia County 1946) ; see *Coffman Estate*, 46 Pa. D. & C. 2d 555 (C.P. Huntingdon County 1968).